Next to your argument in the Drescher matter, I think having heard the argument on the conspiracy, general ruling on the conspiracy issue, I'm not sure that we need any repetition of that argument. We will carry it forward and keep it in our heads so that we can focus more on the discrete matters that are at issue in each of the two remaining cases. This is, of course, the tough case because it involves the judges, and I readily concede it's hard to overcome immunity. But I'm asking this Court to consider, first of all, how vulnerable Deller Oliverwood was because I, you know, had made complaints to the Chief Judge about what was going on with Referee Skeeve and so on. But here's the interesting thing. Younger v. Harris talks about generally you're the defendant, and you want to stop something bad that's happened to you in state court. Younger says we're not going to do that. In these cases, we were seeking relief. We were asking to be heard, and we were shut down. Now, this Honorable Court has said, I think it was in the Green v. City of Tucson case, I'm not sure, but has spoken that in these younger cases, the person coming into court is the defendant. So what I'm really saying about what happened after the exit order and we were going into court was really a denial of meaningful access to the court. And the interesting thing about it is it involved the one father who we have alleged is extremely abusive. And it seems to tie in with what seems to be going on in many state courts, almost to the point where, oh, Darla Elwood, you've alleged domestic violence. Oh, you say your kids were abused. Oh, you say he's a battering father. Don't take it personally. You're going to lose custody. Based on what Mr. Ducote said, who's an expert in representing women throughout the United States, particularly those who feel that the system has let them down and they go off and take children. But anyway, more to the point, I'm alleging a First Amendment free speech. We have got to do something about the courts. If you have an advocate, a lawyer who is familiar with the system, who has been in the business for some time, who takes these issues very seriously and tries to approach it from the rule of the law, that person can be a great asset to the court. And the court should not be killing that messenger. When the women up in Santa Clara County picketed against the abusive custody evaluator, that judge, Comar, says, wait a minute. I'm going to listen to them. And he took to heart what they had to say, created a committee, what they call the Comar Committee, and out of that came some good rules. And because the custody evaluator perceived she was going to start losing money, she sued these mothers and the lawyer in that slap action, and they prevailed. But here's the point. Judge Cush Rushing said, he was eventually elevated to the Court of Appeals, he said, these mothers may have an ax to grind, but those are generally the people who get change in the system, and we should never, never put down people or retaliate against individuals who are trying to tell the system, you know, that there have to be changes. We have to apply the rule of law, and we have to approach this problem, the naughty problem of domestic violence and the protection of abused children in a non-authoritarian way, in a way that sorts out the very complex problems of family life when they come into the court. Now, we were in Judge Cahayan's court on an OSC right contempt against Mr. Moran. Again, we alleged that he was abusive. We're not saying to Judge Cahayan, you made a bad law, a bad ruling. We said, okay, we're in the middle of it. All the evidence was on our side. Just make a ruling. We're only asking this court for relief, really, the declaratory judgment would be in the nature of the mandamus. Why would he stop that? So the difficulty, obviously, you know, you may be entirely correct. I don't know about the policy administering family law courts in the State of California. Right. But we are not in the food chain determining policy for the State of California. And even if you're correct that that proceeding should have come out differently, again, we're not the California Court of Appeal. And so, you know, that's the problem, it seems to me, that you face here, is that you're, in effect, asking us to overturn the California Court decision, which we can't do, or interfere with an ongoing proceeding that's on appeal, which we cannot do. Well, Judge Graber, we didn't take the appeal on Judge Gannon. Well, I'm flattered. And Judge Reimer, I'm sorry, Judge Reimer, we did not take an appeal of Cahayan's dismissal of the OSC and the dissolving the temporary restraining order, which was simply to extend the harassment injunction against Mr. Warren for another two years. But I believe that this Court does, if I could turn to the other judges, I believe that this Court does indeed have jurisdiction to look into the conduct and allow a reversal with respect to Judge Farrell, Judge McLaughlin, and Judge Dacon. In my reply brief, which I appreciate very much that you accepted, even though in excess of a thousand words, I do that analysis that you're required to determine whether or not you can consider entering a declaratory judgment or perhaps even suing for damages. And you go through and you finally get to the final analysis. We concede that they were involved in judicial action when they took the acts against us that they did. Now, we were, before Judge Farrell, on the slap action. There's absolutely no interference. We went to the Court of Appeals. I asked the Court to take judicial notice. We got a reversal. And then the day of the hearing on the likelihood of whether Mr. Warren would win, he abandoned it and dismissed it with prejudice. I'm moving for cause and will be taking other action. What we're saying is Judge Farrell created for himself, with no subject matter jurisdiction, he gave himself permission to continue trial proceedings when we have appeal. There was nothing, the entire complaint. So the question, the legal analysis is, was Judge Farrell acting in a judicial capacity? Yes. Did he have subject matter jurisdiction to continue proceedings? No. He was a trial judge. Nobody can test that. That case was on appeal. He was not an appellate judge. Did you seek mandamus from the Court of Appeal directing him to cease and desist? No, I didn't, Judge Fletcher, because, you know, I'm writing appeal. I've got the CSEA. I've got the Federal cases going. And I don't know. I understand that. Yes. I did not. But that's where you should have been going. All right. Then with respect to Judge McLaughlin, the – I've set out all of the California rules of court showing that he lacked subject matter jurisdiction to assign a CSEA enforcement action to Commissioner Zykon. Commissioner Zykon had to know from his limited authority under Article VI, Article VI, Section 22 of the California Constitution that he had very limited authority. And California courts construe judicial temporary judges who were actually lawyers appointed by the court, work at the will of the court. And because he's a temporary judge, it's very narrowly construed. Neither of them, Judge McLaughlin, acted in excess of all jurisdiction because he had no subject matter jurisdiction. And that's because child support enforcement has become such a major, major concern for all enforcement. State courts, you're going to have to have qualified child support enforcement commissioners hearing this. This was not the private family law action. What would be a private family law action? Mr. Moran was free to go directly to Commissioner Zykon and say, look, I'm issuing an OSC rape contempt. He was free to go to him for what's called in family law court a motion to set arrears. He chose to use the governmental authority of the Los Angeles County Child Support Enforcement Department with all the draconian power that that department has. As a result of which, the federal government has said in, I think it's 654, look, if you're going to do this, you've got to have a plan. The plan means that there's certain due process rights guaranteed, not just the custodial parents, but the non-custodial parent, because the non-custodial parent is the person you want money from. And part of that due process is that those, the person, the obligor is supposed to have a hearing before a qualified child support enforcement commissioner. They acted in excess of all subject matter jurisdiction, and I would respectfully request my amount of time. Okay. Not quite. All right. Thank you. May it please the Court. I am Sandra Barrientos. I am here on behalf of Judge William McLaughlin, Judge Robert, John Farrell, Commissioner Robert Saccone, Referee Valerie Skiva, and Judge Hayde Kahian, as well as the California Department of Justice. To begin with, I'd like to address the issue of Anthony De La Plain's claim against the California Department of Justice. Mr. De La Plain concedes that the Eleventh Amendment bars the claim against the Department of Justice. His issue is that he was denied leave to appeal, leave to amend the complaint. As I said forth in our brief, leave was never sought. It just was not sought. Judge Baird in the district court said, you don't do that, in reference to Ms. Barry's comment about, I don't know how to do that. I would have to amend. I don't know how to do it. I'd like to wait to know who's in and who's out. I don't want to take the trouble to do that now. Rule 15 states you don't have to seek leave. You just amend. There was never an order denying leave to amend, as to Mr. De La Plain. As to the State Court jurist, appellants concede that judicial immunity is an issue with them. We don't get to judicial immunity. We have Rooker-Feldman and unioner abstention, which bar the individual claims against the jurist. Judge William McLaughlin. Well, aren't they alternative? Does it actually matter to your clients? If all of those possible avenues were open to us, is there some reason why it matters to your clients? Which avenue is taken? Not particularly, Your Honor. Only to the extent that, according to Rooker-Feldman, this Court doesn't have jurisdiction to have a lateral review of the State Court rulings. And that is what plaintiffs are seeking. We can disguise it in terms of a civil rights violation. We can disguise it as a systematic abuse of battered women and children in the California courts. But as Judge Reimer has earlier stated, it is not this honorable court's province to reformat the California Superior Court in family law matters. Appellants themselves side Barrett v. Harrington to show why judicial immunity should not apply to this case. Barrett v. Harrington, the Sixth Circuit Court, found that judicial immunity applied and, in fact, went on to cite their opinion in Martinez v. Winner, which said that the judge's province, presiding judge's province, is to assign another judge to hear a case, which is the matter that the appellants can have issue with Judge William McLaughlin as the presiding judge who allowed Commissioner Saccone to hear the child enforcement action. They're saying, we don't want this Court, the Federal Court, to interfere, but they're asking this Court to declare all the rulings to be null and void, to enjoin the enforcement proceeding. I think we understand that that's what's being asked of us. Unless the Court has any other questions, I will submit and allow time. I don't think so. Thank you. Good morning, Your Honors. My name is Anita Brenner, and I am counsel for Judy Hutchinson, a county employee who is sued here in her individual capacity. Ms. Hutchinson had the misfortune to show up for work on May 22, 2002, to the courts where she was assigned. The day before, and I am basing this, Your Honor, on the allegations in the pleading, much of the argument, I would submit, presented today orally by appellant and in these briefs, goes beyond the four corners of the complaint. But looking at the allegations of the complaint, assuming arguendo they are true, what we know is that on May 21, 2002, Ms. Berry orally told some people she would be appearing the next day ex parte. And on the next day, May 22, she appeared ex parte. It's a confusing set of pleadings, but she's in a court. A judge's sign there isn't there. She writes a note and hands it to the clerk to give to the judge. That's another ex parte communication. And her complaint asked to Ms. Hutchinson is as follows, that Ms. Hutchinson did not return and therefore must have been conspiring with all of these judges represented by Ms. Barrientos. The court below did not reach the issues of the immunities. The court decided it on Woodrum versus Woodward. Looking at this very factually dense complaint, when you look at all the facts, it just doesn't add up to showing any meeting of the minds between Ms. Hutchinson and the judges. I would submit that there is no federal question here. There's some confusing language in the reply brief, which refers to the social workers and adding new causes of action as to the social workers, possibly as a typographical error. But be that as it may, there was no amended pleading submitted below. It would not be in the interest of justice to allow any amended pleading in this case, which merely adds new state causes of action and new state defendants on those causes of action. Unless there are further questions. Thank you very much. Thank you. Good morning. May it please the Court. My name is David Kastenholz. I'm here appearing on behalf of the defendant and appellee Robert Drescher, one of the attorneys in this action. I'm here simply to reiterate the brief that was submitted. Which I assure you we have read. Yes. We just very, very briefly. We believe that the district court ruled properly in dismissing the action. We believe that there was a failure to allege deprivation of constitutional rights as alleged. We believe there's clearly a failure to allege any conspiracy with any facts between my client, Mr. Drescher, and Judge Farrell in connection with an alleged conspiracy. I think the case law, including Woodrum, is very clear about that, that you have to have an agreement to have a conspiracy not only were the specifics of the agreement not alleged, but there was no agreement alleged between Judge Farrell and Mr. Drescher. And finally, on the issue of the First Amendment and equal protection claims, we believe it's also clear that they failed to allege sufficient facts that would allow a court to even consider their First Amendment or equal protection claims. All right.  Mr. Katzenholz. Ms. Berry, you have a few seconds. Just very quickly on Ms. Hutchinson. I don't think she had a misfortune to go to work. I think her misfortune was to violate her ethical code of conduct and to march right into Commissioner Ito's chambers, following right on the footsteps of Judge McLaughlin and Commissioner Zykon. And I've talked about her, how she violated the ethical code of conduct. I didn't think it was confusing about what went on. I went to Judge McLaughlin, said I didn't want an assignment. He told me to stay in his courtroom. What they didn't know was my client was sitting in Commissioner Ito's courtroom, where Commissioner Zykon was holding cases, and Judge McLaughlin didn't recognize her. And it was the fact that my client happened to be there that saw these three people acting very, very quickly. This is CSEA. This is not a private child custody matter. They acted in excess of subject matter jurisdiction, and Ms. Hutchinson does not at this point at the pleading stage have qualified immunity. Thank you very much, Your Honor. Okay. Thank you. Now, the matter just argued will be submitted. And before we hear argument in the third case, the Court's going to take a very brief recess. Thank you.
judges: B. Fletcher, Rymer, Graber